## Joshua Patterson *versus* David Creighton *& al.*

An oath, taken by assessors, that they will "faithfully and impartially perform the duties assigned them," answers the requirement of statute, directing them to be "duly sworn."

The highway tax must be deemed to be assessed by the assessors of the then current year.

The assessors are required by statute to ascertain from the lists of the highway surveyors of the preceding year, who had not discharged their highway taxes for that year, and to place the amounts found due from such persons in a separate column of the money tax assessed by themselves.

All warrants issued by the proper authorities, are, at common law, to be executed and returned by the officer to whom they are directed, with his doings thereon; and his return, as to other parties, is conclusive.

"A list of the persons, and the sums" required by statute to be delivered by assessors to highway surveyors, may not properly be denominated a warrant.

The list of delinquent persons, with the amounts of the deficiency of each, which it is the duty of highway surveyors to render to assessors, cannot be legally rendered, unless the surveyor has given the notice and made the demand for services required by statute.

The statute requires no return other than those lists, and it may be regarded that the persons whose names are borne on these lists are delinquent for the sums respectively specified.

A return of such list, without previous compliance with the requirements of statute, would render the surveyor liable in damages to the aggrieved party.

A list, not bearing the official signature of the surveyor, is in legal contemplation no list. It will not render the surveyor responsible nor authorize the ulterior proceedings of the assessors.

Patterson *v.* Creighton.

A surveyor will not be allowed to perfect his list, if his own evidence shows that his preliminary proceedings would not justify it.

The records in the offices of the clerk and assessors should show that the surveyors' duties have been properly discharged.

A highway surveyor returned a list of the persons who had not discharged their highway tax, and the sum for which each was delinquent, but did not affix to it his official signature. The assessors of the following year treated it as a legal list and assessed the respective sums in the money tax of that year. By virtue of the warrant from those assessors, the collector seized and sold certain property to discharge a tax, and the owner brought his action of trespass against the assessors : — *Held,* that, although the assessors erred in supposing they had before them legal evidence of the deficiency, and in transferring the sum to the omitted list, yet, as there appeared to be no want of "personal faithfulness or integrity," they were not liable.

The subject matter of complaint in such case might properly be presented to the assessors, with a right of appeal to the county commissioners, in the event of an unsatisfactory result.

On REPORT from *Nisi Prius,* APPLETON, J., presiding.

This was an action of TRESPASS. Plea, general issue. The writ was dated Jan. 29, 1855, and alleged that defendants took the plaintiff's four-wheeled pleasure wagon, with force and arms, on the 29th of August, 1854, and converted the same to their own use, at Warren, in Lincoln county.

The plaintiff introduced in evidence an original warrant of commitment, with the list of taxes, dated June 25th, 1853, signed by the defendants and Lewis Vaughan, jr., the other assessor, also a second warrant, with a supplemental list of taxes, without date. They are both addressed to Robert Spear. By the list of names, accompanying the first warrant, the plaintiff's tax was $24,69.

Robert Spear, the collector of taxes, was called as a witness by the plaintiff, and Seth O'Brien and George Kirk testified for the defendants. The important facts in their testimony appear in the opinion of the Court.

The case was withdrawn from the jury and submitted upon the evidence to the decision of the full Court. If the action could not be maintained a nonsuit was to be entered, otherwise, a default.

*A. P. Gould,* for plaintiff.

The tax was illegally assessed; and the defendants directed

Spear to distrain the goods of the plaintiff without lawful authority, and were therefore trespassers.

It will be seen hereafter, that the circumstances are such, that it is exceedingly doubtful whether the 88th § of c. 14, R. S., will apply, so that plaintiff's only remedy is against the assessors.

Sect. 56, c. 14, R. S., affords no protection to the defendants, because, (1st,) they were not the assessors of the town of Warren when they issued their warrant of distress, with directions to collect the tax of $35,62, which they had put into the supplemental tax, nor when they assessed that tax. And, (2d,) because they were not "required by law" to assess that tax.

*First.*—By vote of the town the board of assessors consisted of three persons. Only two of them acted in assessing the supplemental tax, and I submit that but one of them at least was legally qualified. The oath administered to Creighton, was not such as the law required. The immunity of the statute is to assessors, not to persons assuming to be such, without legal right.

R. S., c. 5, § 9, requires assessors, as well as other town officers, to be "duly sworn." The oath in use when the Revised Statutes were framed, was the one prescribed by the statute of 1821, c. 116, § 1, and was in the following words: "You solemnly swear, that you will proceed equally and impartially, according to your best skill and judgment, in assessing and apportioning all such rates and taxes as you may, according to law, be directed to assess and apportion, during your term of office."

Such is the oath in use ever since the organization of the State, and long before. In this case, we have the language of the oath administered, and in Creighton's case it certainly does not conform to the above oath.

*Second.*— The statute affords immunity to assessors only in assessing and committing such taxes as "they are required by law to assess." But the defendants were not "required,"

nor even authorized by law to assess this tax, and direct Spear to distrain the goods of the plaintiff to pay it.

R. S., c. 25, § 70, provides that "the surveyor, at the end of his term, shall render to the assessors a list of such persons, (if any,) as shall have been deficient, on due notice, in working out or otherwise paying their highway tax; which deficient sums, shall be placed by the assessors in a distinct column, in the next assessment of a town tax upon such delinquent, and collected like other town taxes."

No return whatever was made by O'Brien, the highway surveyor, "at the expiration of his term of office," nor until after "the next assessment of a town tax had been made." O'Brien says, in his testimony, that he returned his list of names in June, 1853. The assessors had no information which would authorize them to assess plaintiff's road tax of 1852 in the "first money tax" of 1853. There was a memorandum on the back of his warrant, unsigned, from which it might be inferred that a portion of the tax was unpaid, but there was nothing from which it could be inferred even that plaintiff had been notified to work it out, or that the state of facts existed which would authorize the defendants to assess it upon him as a money tax.

The statute, c. 25, § 67, provides that the surveyor shall give reasonable notice to plaintiff, in writing, if desired, of the sum plaintiff is assessed; and also "forty-eight hours notice of the time and place he shall appoint to work," &c.

O'Brien, in his testimony, says nothing about notifying the plaintiff but once, the first day which he fixed upon; and then he is not able to say he gave him forty-eight hours notice, while the plaintiff testifies that he gave him none.

In *Fossett* v. *Bearse*, 29 Maine, 523, other testimony than the officer's return was rejected; and this Court held the ruling to be correct. And it is also there held, that even under the statute of 1848, authorizing a constable to amend his return, before the amendment can be allowed, it must be made to appear that the fact is according to the proposed amendment. I know of no authority for a highway surveyor to

amend his return, after he has gone out of office, so as to affect the rights of parties as to past transactions.

The statute authorizes a delinquent highway tax to be "put into the next assessment of a town tax," and no other.

They had no authority by statute, nor from any other source, to put a deficient highway tax into a supplemental tax. The authority to make a supplemental tax is limited to certain cases.

R. S., c. 14, § 53, provides that "when the assessors discover that, by mistake, they have omitted any polls or estates, they may, by a supplement to the invoice and valuation, assess such polls or estate."

They have no authority to add, by supplemental tax, to polls and estates already taxed.

Sect. 53, c. 14, provides for omissions by mistake, of polls and estates wholly omitted, to be supplied by supplement to the invoice and valuation.

But § 70, of c. 25, provides for a different case; adding nothing to the "polls or estates," or to the "invoice or valuation," making no assessment, but simply adding the deficient highway tax "in a separate column," to the tax of the delinquent person, already assessed.

The defendants acted under § 53, of c. 14, rather than § 70, of c. 25; and in this they were wholly wrong.

A large money tax was assessed against plaintiff in the spring of 1853, which had been paid before the supplement. The assessors add nothing, so far as he was concerned, to the "polls or estate," to the "invoice or valuation," in the supplement; but simply put his tax in with the money tax, against other estates than his, assessed in the supplement.

The immunity of assessors from liability for error of judgment, does not apply to such a case. *Withington* v. *Eveleth,* 7 Pick. 106; *Little* v. *Merrill,* 10 Pick. 543, 546.

Our statute, exempting assessors from liability, was enacted in 1826. In 1834, the case of *Mosher* v. *Robie & al.,* 11 Maine, 135, was decided, giving a construction to the statute. The Court say:—"In order to understand the object of the

framers of the statute, it should be kept in mind, that previous thereto assessors were not only answerable for their own neglects, but also for the omissions and the illegal acts of others. 13 Mass. 272. If they assessed a tax, void by reason of irregularity in the proceedings of the town or parish, or its officers, the assessors were held responsible to the individual assessed, provided the assessment was enforced. The object of the statute of 1826 was, no doubt, to relieve them from this hazardous accountability for the omissions of others, permitting them to remain answerable only for their own misdoings. If they assess * * what they are not required or authorized to assess, the protecting statute does not reach them. It could not have been intended, that in such case, the individual aggrieved should be without redress. The tax is void by reason of the proceedings of the assessors. The property of a citizen has been taken by their order, contained in their warrant to the collector to satisfy this void tax, and can it be that the law affords no remedy?" And again they say, p. 138:—"We think the true construction of the statute of 1826, c. 337, § 1, is to leave the assessors answerable for their own misdoings, and relieve them from all liability for the misdoings of others." See 12 Maine, 254.

This opinion is re-affirmed in *Trafton* v. *Alfred,* 15 Maine, 258, 260.

Thus the law stood upon the adoption of our Revised Statutes, when the Legislature re-enacted the statute of 1826 in its identical language.

In *Tucker* v. *Wentworth,* 35 Maine, 394, 397, SHEPLEY, C. J., says, the assessors of towns are relieved from liability for making assessments by the provisions of stat. c. 14, § 56, as amended, *only when " they are required by law to assess any tax,"* &c. That was for assessing a tax on a school district.

In *Powers* v. *Sanford,* 39 Maine, 183, the Judge, on p. 187, says:—"By the provisions of stat. c. 14, § 56, *as amended,* the assessors of a town, who are required to assess a tax upon a school district, are exempted from any personal liability when they act with faithfulness and integrity, and any further

Patterson *v.* Creighton.

liability is to rest solely on the district. But this does not exempt the town from liability, incurred by its own acts," &c. That was an action against a town for raising money by an illegal vote of the town. No "misdoing" was imputed to the assessors, but it was the illegal act of the town itself of which complaint was made. No question was before the Court involving the liability of assessors, and the remark of the Chief Justice cannot be regarded as intending any restriction upon the established construction of the statute.

And it is of the "misdoings" of the assessors that we complain :—

1. Because they assessed the plaintiff's road tax at all against him, as a money tax, when he had not been guilty of any such neglect as authorized them to do so : and —

2. Because they had no legal authority for putting it into the supplemental tax : and —

3. Because in assessing it as a money tax, if authorized to do so, they did not do it in the manner required by law.

*Henry Ingalls*, for defendants.

The statute provides no *form* of oath to be administered; and if great strictness should be required, there are probably comparatively few towns in the State in which the oaths to municipal officers would not be found imperfect. The fact that the statutes prescribe no *form* of oath, is evidence that no particular form was required. The oaths, in this case, were much more formal than in *Welles & al.* v. *Battelle & als.*, 11 Mass. 477, in which case they were held sufficient.

The portion of the highway tax apportioned to District No. 1, was duly committed to the surveyor, and a copy of the commitment makes a part of the case. At the expiration of his term he returned to the assessors a "*list*" of those who were deficient in working out their highway tax. This return, or list, is not signed by the surveyor, but he offered to sign it, and should have been permitted by the Court to do so, defendants having moved that he have leave to do so, if any signature was necessary. It is contended, however, that it was not necessary that the surveyor should sign the list or re-

turn.   He testifies that he *returned* the warrant with the list of those deficient, and this is a compliance with the law.

It is alleged by the plaintiff that due notice was not given him to work out his tax.   In the view I take of this case, whether such notice, or any notice, was given or had, is perfectly immaterial.

The deficiency in the highway tax of the plaintiff, returned by O'Brien, was $35,62.

The defendants also contend that, by the report, agreed statement and copies, it very clearly appears that Lewis Vaughan, jr., (now deceased,) David Creighton and Joseph Starrett, (the last two being defendants in this action,) on the 7th day of March, 1853, were legally chosen assessors of Warren for the then ensuing year, and that Robert Spear on the same day was legally chosen collector of taxes for the same year; and that said assessors and collector were duly qualified, for the reasons and by the authority before mentioned; and that on said 7th day of March a money tax of $2000 was legally raised by said town, and that the same was subsequently legally assessed and committed to said collector.

Subsequent to the general and ordinary assessment, there was a supplemental tax assessed, a copy of the record of which, and of the warrant of commitment of the same to the collector, make a part of the case.

It is upon this supplemental assessment that the principal, if not the only question in this case, arises.

Highway surveyors are required, at the expiration of their term, to render to the assessors a list of such persons, if any, as shall have been deficient, on due notice, in working out their highway tax; and such assessors are required to put such deficient sums in the next assessment, upon said delinquents, that they may be collected as other town taxes.   R. S., c. 25, § 70.

The deficiency of the plaintiff was not put into the next assessment of town tax.

R. S., c. 14, § 53, provides that "when any assessors, after having completed the assessment of any tax, shall discover

that by mistake they have omitted any polls or estate liable to be assessed, they may, for the term during which they were elected, by a supplement to the invoice and valuation and the list of assessments, assess such polls and estate their proportion of such tax, according to the principles upon which such assessments were made, certifying that they were omitted by mistake."

It is objected, that a deficiency of highway tax is not embraced by this statute. It is not mentioned in direct terms, it is true; but the manifest intention and meaning of the statute is, that *all omissions in the first assessment, all items which should be included in such assessment, may be included in the supplemental tax.*

The statute requires that the assessors should certify that the omissions were by mistake; and both defendants, both being now assessors of Warren, asked leave to amend their record to conform to the statute, and by inserting December 3d, 1853, as a date, that being the time of the supplemental assessment. That amendment should have been allowed. A town clerk being still in the office, though under a new election, may amend his record made by him while clerk under a former election. *Welles & al.* v. *Battelle & als.*, 11 Mass. 471.

The warrant of commitment of the supplemental tax to the collector certifies that the omission was by mistake.

The statute also requires that the deficient highway taxes should be placed in a distinct column; but this is also amendable; but at most it is but a slight irregularity. Neither this, nor the other matters of form before spoken of, in any manner affect the rights or liabilities of the plaintiff, and afford no right of action in trespass against the assessors. *Welles & al.* v. *Battelle & als.*

But if there was such error or irregularity as to create a liability, the right of action is against the town and not against the assessors, provided they acted with faithfulness and integrity. R. S., c. 14, § 56; *Ingraham* v. *Daggett*, 5 Pick. 451.

This deficient highway tax was rightly included in the

supplement. It was not the intention of the Legislature, nor is it to be fairly deduced from the statutes, that if the assessors omit by mistake to put a deficient highway tax into the next assessment, that the omission cannot be supplied, and that the delinquent is to be thus released from the payment of his highway taxes.

It is hardly necessary to observe, that whether the highway surveyor or the collector proceeded regularly, is a matter of no consequence. The assessors are in no manner liable for any illegal acts or omissions of other persons.

No wrong was done by the assessors to the plaintiff.

CUTTING, J. — Robert Spear, as collector of taxes for the town of Warren, by virtue of a warrant from the defendants, two of the assessors of that town, seized and sold thereon the property described in the writ, for which act the defendants are now sought to be charged as trespassers, for conferring upon the officer unauthorized powers.

The assessment, for the non-payment of which the plaintiff's property was sold, is said to be an unsatisfied balance of the highway tax of 1852, transferred into the money tax of 1853, in a supplemental and omitted list.

The annual meeting for the choice of town officers for the year 1853, appears to have been legally called, and the defendants to have been duly chosen assessors. But it is contended that they were not properly qualified by taking the oath required by law. R. S., c. 5, § 9, requires such officers to be "duly sworn." The oath which they severally took was, in substance, "faithfully and impartially to perform the duties assigned them;" and the law, as embraced in the Act on the construction of statutes, was literally complied with. Ch. 1, § 3, rule 21.

Again: it is urged that the road tax was not legally transferable; that the assessors, for various reasons advanced by counsel, transcended their authority, and thereby imposed upon the plaintiff an unjust and onerous burden, and that the present action is his only remedy. If all these things be so,

then it would seem that he ought to prevail in this suit, although the *gravamen* of the complaint appears to be the difference between the payment of a tax in labor and in money.

It is provided by R. S., c. 25, § 67, that "the surveyor shall give reasonable notice, in writing, if desired, to each person on his list, resident in the town, of the sum he is assessed to the highways and townways, and also forty-eight hours notice, extraordinary casualties excepted, of the times and places he shall appoint, for providing materials and laboring on the same; to the end that each person may have an opportunity to work thereon," &c. And by § 70, that "the surveyor, at the expiration of his term, shall render to the assessors a list of such persons, if any, as shall have been deficient, on due notice, in working out or otherwise paying their highway tax; which deficient sums shall be placed by the assessors in a distinct column in the next assessment of a town tax upon such delinquent, and collected like other town taxes and paid into the town treasury."

Although the law requires, that each taxable inhabitant shall bear his just proportion of the public burdens, yet it is difficult in all cases, owing perhaps to the predominant organ of secretiveness, to ascertain with exactness what that proportion should be. For the ascertainment of that fact, the statute has prescribed various modes of procedure, and invested the assessors, if they be possessed of sufficient moral courage, with the means of a full disclosure. They can require of each individual, resident in their town, a true list of his estates, real and personal, under oath, which, if false, would subject the offender to the pains and penalties of perjury; or if such list should not be duly presented, then all such delinquents are liable to be doomed for such property, or sums, as the assessors, in their judgment, may determine them to be possessed of; from which judgment, under such circumstances, the statute takes away all right of appeal. But such officers, owing to their small remuneration to be received—their hostile attitude imposed, and their fallibility implied, are protected from liabilities for certain mistakes and

errors of judgment, in the honest discharge of their official duties, when in the exercise of their jurisdictional powers. With such views of the law, we will now proceed to the next subject of inquiry, which is, as to the defendants' authority to insert the highway in the cash tax of 1853.

A highway tax must be deemed to be assessed by the assessors of the then current year, who receive the lists, ascertain and record the inventories, adjudge and record the valuations, and thereupon apportion the assessments.  It is incumbent on the assessors to discover from the lists of the surveyors of the preceding year, such persons as were delinquent in discharging their highway taxes by labor or otherwise, and to place all sums thus ascertained in a distinct column in the money tax of their own assessing.

At common law, all warrants, issuing from the proper authorities, are to be executed and returned by the officer to whom they are directed and received, with his doings thereon, and his return, as to other parties, is conclusive.  But "a list of the persons and the sums," delivered by the assessors to the surveyors, may not properly be denominated a warrant; still, the list of deficient persons, and the amount of their deficiency, which the surveyors are to render to the assessors, cannot be legally so rendered, unless the surveyor has first given the required notice, and made the requisite demand for the services; and, inasmuch as the statute requires no other return than such lists, it may be inferred, when such lists have been returned, that the surveyor has discharged all his duties, and that the names borne thereon have been delinquent in the sums specified, after due notice; and a surveyor might become legally liable to respond in damages to the party aggrieved, who should return such list without a previous compliance with the requirements of the statute.  But in order to render the surveyor responsible, such list, by him handed in, should bear his official signature, which was omitted in the present instance; and, consequently, the list so returned, was, in legal contemplation, no list, and therefore

the assessors had no sufficient authority to justify themselves in their ulterior proceedings.

But it is contended, that the surveyor ought now to be permitted to come into Court and subscribe his list. Such liberty should not be granted, if the Court be satisfied from the evidence of the officer himself, introduced by the defendants, that his preliminary proceedings would not justify such an act. And, besides, we are of the opinion, that the records and documents, as kept in the clerk's or assessors' office, should be the defendants' only justification; otherwise, they would be no protection to the persons assessed, if they were liable to be controlled by parol testimony and subsequent amendments. The defendants then have erred, to say the least, in the regular discharge of their duty. Are they liable in this action, or can they justify or excuse themselves under the statute, c. 14, § 56? That section provides, that "the assessors shall not be made responsible for the assessment of any tax which they are, by law, required to assess." We have already seen that the highway tax of 1852 was assessed by the defendants' predecessors; and it is argued that a deficient highway tax, which the surveyor is required to return at the expiration of his office, cannot be said to have been omitted by mistake; and there is much force in the argument. But still the question returns, were not the doings of the defendants within the spirit of the statute?

In the first place, they had jurisdiction over the subject matter. The plaintiff was an inhabitant, and subject to taxation in their town, and had legally been assessed therein; he had paid his money tax, and a portion of the highway tax, without complaint or objection. Under such circumstances, it comes to the knowledge of the defendants for the first time, when about to make their supplemental list, that the plaintiff has been remiss in working out his highway tax. We are satisfied that they erred, both as to matters of fact and law, but with no want of "personal faithfulness or integrity;" they were mistaken in supposing that they had the legal evi-

dence before them of any deficiency; they erred in trans-ferring that deficiency to the omitted list.

But the assessment of a highway tax, is one thing, and the assessment of a money tax, another; the former may be only an incipient stage towards the latter. To assess a money tax, is to ascertain from certain *data*, previously obtained, each individual's just proportion, which he is to contribute to the joint fund for the protection of his property, liberty, and even life. The *data* so obtained, as the basis of taxation, is, first, the inventory and valuation; and, secondly, the delinquent highway taxes of the preceding year; and the requirement of a separate column for the insertion of the latter in the tax bills, was designed only to show the basis of such assessment. It was as much the duty of the assessors to ascertain and re-assess for such delinquencies, as it was to make an original tax, and any error or mistake must refer as well to the one as to the other. Under the circumstances, as disclosed, the subject matter of complaint might have been presented to the assessors themselves, with the right of an appeal to the county commissioners, in the event of an unsatisfactory result. But however that may be, we think that the error of the defendants is of such a character as to exempt them from personal liability. And, according to the agreement of the parties, the plaintiff must become　　　　　　　*Nonsuit.*

TENNEY, C. J., and APPLETON, MAY and RICE, J. J. concurred.